<u>**FOR PUBLICATION**</u>

|  |  |  |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY | | **FILED**<br>JAMES J. WALDRON, CLERK<br><br>October 13, 2011<br><br>U.S. BANKRUPTCY COURT<br>NEWARK, N.J.<br>BY: <u>/s/Diana Reaves,</u> Deputy |
| IN RE | : Chapter 13 | |
| Celeste A. Gloster | : | |
| Debtor. | : | |
|  | : CASE NO.: 11- 13273 (NLW) | |

<u>**OPINION**</u>

**Before:**   **HON. NOVALYN L. WINFIELD**

<u>**A P P E A R A N C E S :**</u>

Scott E. Tanne, Esq.
Christine Curran, Esq.
Scott E. Tanne, LLC
25 Chatham Road
Summit, NJ 07901
Counsel for Gloster

Brian M. Knapp, Esq.
Marie-Ann Greenberg, Esq.
Chapter 13 Standing Trustee
30 Two Bridges Road
Suite 330
Fairfield, NJ 07004
Staff Attorney for Chapter 13
Standing Trustee

The issue raised by the Chapter 13 Trustee in the case described below is whether a debtor who is ineligible for a Chapter 13 discharge pursuant to Bankruptcy Code § 1328(f) may obtain confirmation of a Chapter 13 plan that provides for the strip-off of a wholly unsecured junior lien. As set forth below, the Trustee's objections are overruled and the Chapter 13 plan is confirmed.

This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K) and (L).

## BACKGROUND

**A.    Chapter 7 Case**

Celeste A Gloster ("Mrs. Gloster" or "Debtor") and her husband filed for relief under Chapter 7 of the Bankruptcy Code on September 30, 2010. In their bankruptcy petition, their residence was listed as having an estimated value of $182,000. The residence was listed as encumbered by a first mortgage held by Chase Manhattan Mortgage ("Chase") in the amount of $200,200, a second mortgage held by Bank of America ("BOA") in the amount of $51,171 and a judgment lien held by BOA in the amount of $6,838. Mrs. Gloster's Chapter 7 case was treated as a no-asset case and the Trustee's Report of No Distribution was filed on November 29, 2010. The Glosters received their discharge on December 30, 2010.

Approximately four months after the Chapter 7 case was filed, on February 4, 2011, Mrs. Gloster filed for relief under Chapter 13. On the petition, the Debtor's residence is again valued at $182,000 and the secured claims as to this property are listed as totaling $258,209.00. The

2

Chapter 13 Trustee advises that the valuation of her residence is based on the same current market analysis that was submitted to and relied upon by the Chapter 7 Trustee. BOA did not file a proof of claim. Only the first mortgagee, Chase, and the Internal Revenue Service filed proofs of claim. The Chase proof of claim reflects a total amount due of $226,659.49. Mrs. Gloster's Chapter 13 plan proposed to cure the first mortgage arrears in the amount of $18,000 and strip-off both the second mortgage and judgment lien held by BOA. It appears that BOA was properly served with the Chapter 13 plan and has not objected to its treatment. The Chapter 13 Trustee, however, objected to Mrs. Gloster's plan. The Debtor's schedules reflect excess income of $389.22, which the Debtor proposed to devote to her Chapter 13 plan for sixty months. But, the Chase proof of claim sets forth an arrearage claim of $27,227.52. To deal with the claim the Debtor's modified her plan to provide for payments of $389.22 for five months and $575.00 for fifty-five months. These increased payments are expected to be met by further reducing expenses and from a reduction in the payment due to Chase as a result of the reduction in the interest rate.

**2. Mrs. Closter's Certification**

In response to the Trustee's objection, and to address the court's concerns, Mrs. Gloster submitted a certification that described at great length the circumstances that caused her to file the instant Chapter 13 case:

> I purchased my home in June 2001… . It is a detached single family home with one bedroom and one bathroom. The total square footage is about 800 sq. ft.… .
> (Certification of Debtor ¶ 2)
>
> In early 2006 an addition was started on the house that would add another bedroom and bathroom as well as a family room. The final square footage was estimated to be at 1,500 sq. ft. To finance the addition, I took out a home equity

3

loan on the house with Bank of America. The construction continued for about six to seven months. There hasn't been any work done since mid-2006. Currently, only the foundation, outer walls, and roof have been erected, and the windows have been installed. (Certification of Debtor ¶ 3)

At the time the construction started, I was current with the first mortgage, and it was well within the household budget to be able to afford a second mortgage payment. (Certification of Debtor ¶ 4)

I am employed as a health care recruiter and have been in this line of work for more than a decade. I have owned my own business since 1996, the purpose of which was HR consulting and training. In July 2006 I left the hospital with which I had been employed because of a hostile work environment created by new management. Based on the success I experienced in my old position and the good reputation I had developed, I believed I could be successful doing the same thing with my own company if I dedicated myself to it full time… . (Certification of Debtor ¶ 5)

By early 2007 the business was still not producing the income that I needed or expected, so I started to look for employment. The jobs that were available at that time were paying less than the position I had left in July 2006. I took the job since I needed the income, but I knew it wasn't going to be enough money to meet all of my obligations. This job was not a good fit for me, so I left and started a new job in April 2007. In June 2007 I left this job for a third job,… but I was unexpectedly let go from this job. I collected unemployment from January 2008 until December 2008, when I was hired at my current job. (Certification of Debtor ¶ 6)

During the time that I was under-employed and unemployed, I feel [sic] behind on my mortgage payments and other obligations. Through the help of family members I was able to become current. I still did not make as much as I did before July 2006, nor did I earn enough to make ends meet, but I managed to juggle the household expenses until about April 2010, when I once again fell behind on the mortgage. (Certification of Debtor ¶ 7)

Lacking the income necessary to catch up on the mortgage or to pay back our unsecured debts, my husband and I both needed the relief available through Chapter 7 bankruptcy. Our joint Chapter 7 case was filed on September 20, 2010. This case was discharged on December 30, 2010. (Certification of Debtor ¶ 8)

In December 2010, I was told that I was being promoted and would be getting a raise. In January 2011, my paychecks reflected the raise. I thought I would be able to keep the house if I applied my raise to catching up on the arrears. When I reviewed my budget, I knew I would have to cut back on some expenses as well

4

to make it work. Not wanting to accrue any more arrears, on February 4, 2011, I filed the instant Chapter 13 case. (Certification of Debtor ¶ 9)

Mrs. Gloster also states that she is trying to build up her business in hopes of generating additional income. (Certification of Debtor ¶ 11) Further, Mrs. Gloster advises that in June 2011 her first mortgage payment was reduced to 3.00% from 6.375%, providing some additional savings. (Certification of Debtor ¶ 11)

The Chapter 13 Trustee objects to confirmation of the Debtor's plan, because the Debtor's ineligibility for a Chapter 13 discharge precludes strip-off of the BOA claim. Moreover, the Chapter 13 Trustee contends that the plan was not filed in good faith, because, inter alia, the Chapter 13 case was filed only five months after the Debtor filed her Chapter 7 case and the size of the mortgage arrears indicates that the Debtor always intended to file a Chapter 13 case after receiving her Chapter 7 discharge. In other words, the Trustee infers that there were no changed circumstances that prompted the Chapter 13 filing. Finally, the Trustee objects that confirmation of this Chapter 20 case provides the Debtor with the opportunity to receive a greater benefit than can be accomplished solely from a case filed under either Chapter 7 or 13.

## **DISCUSSION**

A Chapter 13 case filed shortly after a Chapter 7 case is colloquially described as a Chapter 20 case. Although not routinely utilized by debtors, Chapter 20 cases have been a part of Chapter 13 practice for many years in a number of jurisdictions. In 1991 the Supreme Court held that a mortgage lien, for which a debtor is no longer personally liable as a result of a Chapter 7 discharge, is a claim as that term is defined in the Bankruptcy Code, and that claim may be treated in a Chapter 13 plan. *Johnson v. Home State Bank,* 501 U.S. 78, 84 (1991). The *Johnson*

5

decision was followed by *Nobleman v. Am. Sav. Bank,* which examined the language and application of §§ 506(a) and 1322(b)(2) to determine that a Chapter 13 debtor cannot strip-down a partially unsecured residential mortgage lien.[1] 508 U.S. 324, 328-29 (1993). Left undecided by *Nobleman* was whether a wholly unsecured mortgage lien on the debtor's principal residence falls outside of the protection afforded by the § 1322(b)(2) antimodification clause and can be stripped-off. In the Third Circuit, this question was answered in the affirmative by *McDonald v. Master Fin., Inc. (In re McDonald),* 205 F.3d 606 (3d Cir. 2000).[2]

The 2005 amendments to the Bankruptcy Code effected changes to §§ 1328 and 1325 that caused courts to question whether a Chapter 20 strip-off of a mortgage lien on a principal residence remains possible. Section 1328(f)(1) now prohibits a Chapter 13 discharge if the debtor received a discharge in a Chapter 7, 11 or 12 case in the four years preceding the date of the order for relief in the Chapter 13 case. Also, under amended § 1325(a)(5) a plan affecting an allowed secured claim may only be confirmed if (i) the holder of such a claim accepts the plan, (ii) the plan provides that the holder of an allowed secured claim retains the lien until payment of the underlying debt determined under nonbankruptcy law or discharge under § 1328, with the value

---

[1] The Court determined that, though a portion of its claim was undersecured as a result of valuation under § 506(a), the bank nonetheless remained the holder of a secured claim entitled to the protection of the antimodification clause in § 1322(b)(2). *Nobelman,* 508 U.S. at 329.

[2] A number of other courts have also determined that the antimodification clause in § 1322(b)(2) is not a bar to the strip-off of a wholly unsecured lien on a debtor's principal residence. *See Zimmer v. PSB Lending Corp. (In re Zimmer),* 313 F.3d 1220 (9th Cir. 2002); *Lane v. W. Interstate Bancorp (In re Lane),* 280 F.3d 663 (6th Cir. 2002); *Pond v. Farm Specialist Realty (In re Pond),* 252 F.3d 122 (2d. Cir. 2001); *Tanner v. FirstPlus Fin., Inc. (In re Tanner),* 217 F.3d 1357 (11th Cir. 2000); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee),* 212 F.2d 277 (5th Cir. 2000); *see also Fisette v. Keller (In re Fisette),* No. 11-6012, 2011 WL 3795138 (8th Cir. BAP Aug. 29, 2011); *Griffey v. U.S. Bank (In re Griffey),* 335 B.R. 166 (10th Cir. BAP 2005); *Domestic Bank v. Mann (In re Mann),* 249 B.R. 831 (1st Cir. BAP 2000).

of distributions made under the plan to be not less than the allowed amount of such claim, or (iii) the debtor surrenders the property securing the allowed secured claim.

The split of case authority on this issue is significant. In his recent decision, Judge Mullins posits that there are three different approaches taken by courts to determine whether strip-off of a wholly unsecured second mortgage is permissible in a Chapter 20 case. *In re Jennings,* 454 B.R. 252, 256 (Bankr. N.D. Ga. 2011). "In the first approach courts hold that chapter 20 lien stripping is impermissible because it amounts to a de facto discharge."[3] *Id.* "Courts that adopt the second approach permit chapter 20 lien stripping; however after plan consummation, without a discharge, the parties' pre-bankruptcy rights are reinstated."[4] *Id* at 256-57. "The courts utilizing the third approach allow chapter 20 lien stripping because nothing in the Bankruptcy Code prevents it."[5] *Id.*at 257. For the reasons articulated below, this court agrees with the courts that

---

[3] *In re Gerardin*, 447 B.R. 342 (Bankr. S.D. Fla. 2011); *In re Fenn*, 428 B.R. 494 (Bankr. N.D. Ill. 2010); *In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008); *In re Mendoza*, No. 09-22395 HRT, 2010 WL 736834 (Bankr. D. Colo Jan. 21, 2010); *Blosser v. KLC Fin., Inc. (In re Blosser)*, No. 08-2353, 2009 WL 1064455 (Bankr. E.D. Wis. Apr. 15, 2009); *In re Winitzky*, No. 1:08-bk-19337-MT, 2009 Bankr. LEXIS 2430 (May 7, 2009); *Lindskog v. M & I Bank FSB (In re Lindskog)*, 451 B.R. 863 (Bankr. E.D. Wis. Apr. 13, 2011); *Bank of Prairie v. Picht (In re Picht)*, 428 B.R. 885 (10th Cir. BAP 2010); *In re Collins*, No. 10-32098-tmb13, 2010 WL 5173840 (Bankr. D. Or. Dec. 15, 2010); *Erdmann v. Charter One Bank (In re Erdmann)*, 446 B.R. 861 (Bankr. N.D. Ill. Mar. 10, 2011).

[4] *Grandstaff v. Casey (In re Casey)*, 428 B.R. 519 (Bankr. S.D. Cal. 2010); *In re Trugillo*, No. 6:10-bk-02615-ABB, 2010 WL 4669095 (Bankr. M.D. Fla. Nov. 10, 2010); *In re Colbourne*, No. 6:10-bk-00983-ABB, 2010 WL 4485508 (Bankr. M.D. Fla. Nov. 8), *amended by* 2010 WL 7376291 (Bankr. M.D. Fla. Nov. 10, 2010); *Hart v. San Diego Credit Union*, 449 B.R. 783 (S.D. Cal. 2010); *In re Jazo*, No. 09-16609-JM13, 2010 WL 3947303 (Bankr. S.D. Cal. Sept. 28, 2010); *In re Frazier*, 448 B.R. 803 (Bankr. E.D. Cal. 2011); *Davis v. T.D. Bank (In re Davis)*, 447 B.R. 738 (Bankr. D. Md. 2011).

[5] *In re Grignon,* No. 10-34196-tmb13 2010 WL 5067440 (Bankr. D.Or. Dec. 7, 2010); *In re Hill,* 440 B.R. 176 (Bankr. S.D. Cal. 2010); *In re Fair,* 450 B.R. 853 (E.D.Wis. 2011); *In re Waterman,* 447 B.R. 324 (Bankr. D. Colo. 2011); *In re Okosisi*, 451 B.R. 90 (Bankr. D.Nev. 2011).

adopt the third approach, allowing lien stripping in a Chapter 20 setting so long as a subsequent Chapter 13 is filed in good faith and a plan is successfully completed.

**A.     Application of the Statute**

First, the changes to the Bankruptcy Code resulting from the amendments set forth in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") did not make any changes to §§ 506 or 1322, which form the basis for a Chapter 13 debtor to strip-off a wholly unsecured junior lien. Congress must be presumed to have known of the use of §§ 506 and 1322 to strip-off mortgage liens in Chapter 13 cases, given that prior to the enactment of BAPCPA six Circuit Courts of Appeal had determined that the antimodification clause in § 1322(b)(2) does not bar the strip-off of a wholly unsecured junior lien on the debtor's residence. Additionally, nothing in the BAPCPA amendments overturns the Supreme Court's 1991 ruling in *Johnson* that a creditor holding solely an *in rem* claim as a result of the discharge of the debtor's *in personam* liability in a Chapter 7 case nevertheless has a claim against the debtor in a subsequent Chapter 13 case that can be treated under a plan. Given the wide-ranging changes effected by BAPCPA, and its emphasis on ensuring that abusive use of bankruptcy protections not be permitted, it is significant that no changes were made to the Bankruptcy Code to disallow strip-off of liens in Chapter 20 cases.

Second, this court does not find that § 1325(a)(5)(B)(i)(I) prohibits lien avoidance in a Chapter 20 case filed post-BAPCPA.[6] The court adopts the thoughtful statutory analysis applied

---

[6] Section 1325(a)(5) provides in pertinent part that:
    (5) with respect to each allowed secured claim provided for by the plan –
        (A) the holder of such claim has accepted the plan;
        (b)(i) the plan provides that –
            (I) the holder of such claim retain the lien securing such claim until the earlier of --

8

by the courts in *Hill* and *Okosisi*. Both *Hill* and *Okasisi* decline to follow the cases that hold that ineligibility for a discharge in a Chapter 20 precludes strip-off of a junior lien. *Hill*, 440 B.R. at 181-83; *Okosisi,* 451 B.R. at 98-99.

The cases that find ineligibility for discharge to bar strip-off reason that under § 1325(a)(5)(B)(i)(I) the holder of a secured claim, who has not accepted the plan, must retain its lien until payment in full or discharge, and as result, strip-off of a lien cannot be accomplished when a discharge cannot be granted. *See Gerardin,* 2011 WL 672050, at *7; *Fenn,* 428 B.R. at 500. Further, some courts conclude that strip-off occurs only at discharge. *Jarvis,* 390 B.R. at 607; *Lilly*, 378 B.R. at 236 ("Where a debtor does not receive a discharge … any modifications to a creditor's rights imposed in the plan are not permanent and have no binding effect once the term of the plan ends.").

Importantly, however, § 1325(a)(5) applies only to allowed secured claims and is not applicable to unsecured claims, which are subject to the confirmation requirements of § 1325(a)(4). *Hill*, 440 B.R. at 183. Under *Nobelman* and applicable governing precedent that permits strip-off, "when a creditor is wholly unsecured after application of Section 506(a), the creditor has only an unsecured claim for purposes of Section 1322(b)(2)." "*Okosisi*, 451 B.R. at 97-98. A claim that is classified as unsecured and subject to modification under § 1322(b)(2) cannot logically be treated as a secured claim under § 1325. *Hill,* 440 B.R. at 183. In this case

---

        (aa) the payment of the underlying debt determined under nonbankruptcy law; or
        (bb) discharge under section 1328; and
    (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

….

11 U.S.C. § 1325(a)(5).

application of § 506(a) to BOA's lien claims results in both claims being wholly unsecured. The accepted valuation of the Debtor's residence is $182,000 and the undisputed claim held by Chase amounts to $226,659.49, producing negative equity of $44,659.49. As a result there is no equity interest in the property to support the BOA liens. Further, because both BOA liens are wholly unsecured the antimodification provision of § 1322(b)(2) does not apply and both liens may be modified (i.e. stripped-off).

Lastly, this court does not find that strip-off occurs only at discharge. Rather, the strip-off of a wholly unsecured lien is effective when the debtor completes the payments required under his plan. *Fissette,* 2011 WL 3795138 at *7; *Jennings,* 2011 WL 2709888 at *2; *Okosisi,* 451 B.R. at 100. The court in *Tran* notes that under § 109 eligibility for a discharge is not among the eligibility requirements for filing a Chapter 13 case. 431 B.R. at 235. The court in *Tran* succinctly summarized the effect of pertinent Bankruptcy Code provisions as follows:

> It is equally significant that, although § 1325(a) and (b) sets forth numerous requirements for confirmation of a chapter 13 plan, nothing in § 1325 conditions confirmation on the debtor being eligible for a discharge.
> Moreover, nothing in § 506, § 1322, or any other section of the Bankruptcy Code provides that a chapter 13 debtor's right to modify or strip off liens is conditioned on the debtor being eligible for a discharge.
> Section 349(b)(1)(C) provides that a dismissal of a bankruptcy case "reinstates … any lien avoided under section 506(d) of this title." But a chapter 13 case in which a debtor completes a confirmed plan is "closed," not "dismissed" at the conclusion of the plan. Section 350(a); Fed. R. Bankr. 5009. Similarly, § 1325(a)(5)(B)(i)(II) conditions any permanent lien modification of a secured claim, not on a discharge, but rather, on completion of a debtor's chapter 13 plan.

*Id. Tran's* review and examination of the various statutory sections not only gives effect to the Supreme Court's direction that statutory interpretation must begin with the language of the

statute, *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241 (1989), but also follows the canon of statutory interpretation that "a statute is to be read as a whole." *In re Visteon Corp.,* 612 F.3d 210, 222 (3d Cir. 2010)(citing *Leckey v. Stefano,* 501 F.3d 212, 220 (3d Cir. 2007)).

**B.    Good Faith.**

Section 1325(a)(3) imposes a confirmation requirement that "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). In addition, it is settled law in this circuit that Chapter 13 contains a good faith filing requirement. *In re Lilley,* 91 F.3d 491, 496 (3d Cir. 1996). The good faith inquiry is fact intensive and requires an examination of the totality of the circumstances. *Id.* Accordingly, it is this court's view that because lien-stripping in a Chapter 20 case provides a benefit that is beyond the ordinary result than can be achieved, it is not enough for a Chapter 20 debtor to file her case, propose her plan, and hope that no one objects. This court will require a debtor to demonstrate her good faith by proffering either testimony or an affidavit explaining the circumstances that gave rise to the Chapter 20 case. For example, courts have articulated the following factors when considering the issue of good or bad faith filing in a Chapter 20 lien stripping plan: "(1) whether the debtors have a need for bankruptcy other than lien avoidance; (2) whether debtors acted equitably in proposing the plan; (3) whether debtors are devoting their income to the plan; and (4) whether the debtors used serial filings to avoid paying their creditors." *Okosisi*, 451 B.R. at 102–04.

After reviewing the Debtor's petition, Chapter 13 plan and certification in support of confirmation the court concludes that the case has been filed in good faith and the plan has been proposed in good faith. It appears that Mrs. Gloster and her husband filed the prior Chapter 7 case because they lacked the ability to fund a Chapter 13 case. Subsequently, Mrs. Gloster has

received a promotion and the payment rate on the first mortgage was reduced, thereby creating funds from which Chapter 13 plan payments can be made. It appears to the court that all of the Debtor's income is devoted to the plan. Further, the Chapter 13 Trustee has not indicated that the non-debtor husband has any additional income that can be contributed to the plan. His modest earnings have already been incorporated into the calculation of disposable net income as calculated on Schedules I and J.

It is true that part of the purpose of this Chapter 13 plan is to strip-off the second mortgage lien and judgment lien of BOA, but it is also evident that the purpose of the plan is to cure arrears of over $27,000.00 on the first mortgage. Further, the Debtor proposes a pro rata distribution to unsecured creditors, albeit the distribution is likely negligible. Here, BOA has not filed a proof of claim and thus will receive no distribution.

It also does not appear to the court that the Debtor's valuation of her residence is unrealistic. Ordinarily the valuation for a strip-off should be supported by a fair market appraisal performed by a qualified appraiser. However, the substantially incomplete construction coupled with the well-recognized decline in value of residential real estate in this market causes the court to find that the Debtor's valuation is within reasonable range. [7]

Finally, the Trustee is correct that the Debtor's use of Chapter 7 and Chapter 13 has conferred a rehabilitative benefit upon her greater than she could have achieved by seeking relief solely under Chapter 7 or Chapter 13. This advantage of a Chapter 20, however, was in place prior to BAPCPA, and nothing in the amendments prohibits such relief. Additionally, there are tangible benefits from this Chapter 20 case. The first mortgage is being cured and maintained,

---

[7] Notably, this is the same valuation accepted by the Chapter 7 Trustee when he filed his Notice of Abandonment of Real Property in the Chapter 7 case.

and Mrs. Gloster retains her home. Further, BOA is in no worse position because of the Chapter 20. In short, as long as the Chapter 20 plan meets the good faith analysis there is no reason to deny this benefit to the Debtor or Chase.

## **CONCLUSION**

As set forth above, a Chapter 13 plan filed in good faith may be confirmed if the proposed strip-off of lien meets the requirements of § 506(a) and § 1322(b)(2).

Dated: October 13, 2011               /s/_____

                                      NOVALYN L. WINFIELD

                                      United States Bankruptcy Judge